The last case for today is 415-0608, People v. Marcus McGath. For the appellant is Ms. Kiwara-Wilson. And for the appellee is Mr. McNeil. Ms. Kiwara-Wilson, you may proceed. May it please the Court, Counsel. My name is Salome Kiwara-Wilson. On behalf of the State Appellate Defender's Office, representing Mr. Marcus McGath. Marcus McGath is currently serving a 25-year sentence in the Illinois Department of Corrections for the unlawful delivery of 0.1 grams of cocaine. In order to convict Mr. McGath, the State was required to prove beyond reasonable doubt that Mr. McGath delivered the cocaine, in this case, to the confidential informant, Courtney Barton. In order to do this, the State presented two key pieces of evidence. The testimony of Ms. Barton and the audio recording that is the true and accurate depiction of what happened during the transaction. Your Honor, this is not a case where there is a credibility contest between two witnesses. In this case, we have the testimony of Ms. Barton and the true and accurate recording, which is uncontroverted that it was the true and accurate recording of the transaction. On the other hand, Ms. Barton's testimony is contradicted by that recording. And the recording shows that it was Katrina Ross and not Mr. McGath that delivered the cocaine in this case. Who decides what the recording showed? Your Honor, just listening to the recording that's in the record, the transaction happens at the beginning when Ms. Barton enters the home after knocking on the door. Well, but can't different people hearing the recording draw different inferences as to what it means and what people are saying and how they're saying it? No, Your Honor. In addition to the fact that there is an exchange at the beginning, the rest of Ms. Barton's testimony supports a finding that the transaction happened when she entered the home. When she first enters the home, there's an exchange between her and Ms. Ross. And then when the conversation continues between Ms. Ross, Ms. Barton, and Mr. McGath, Ms. Barton references having the cocaine in her hand that she's going to drop off. This is long before Mr. McGath enters the room. So I think the recording is very clear that the transaction happened before Mr. McGath came into the room at all. And in addition, Ms. Barton's testimony as to the controlled by itself suffered from additional credibility problems. For example, she testified that she sent text messages to Mr. McGath in order to set up the transaction. And she testified that the police officers she was working with saw the text messages and saw her texting Mr. McGath. However, the officers who testified in this case contradicted that testimony. They did not see the messages and they did not see her send any messages that day. Ms. Barton was a witness who had a criminal history of forgery convictions and had in the past received favorable sentences when she worked with a proactive unit. In this case, before she approached the proactive unit, she had just been arrested for driving on a suspended license. Therefore, Ms. Barton in general was not a credible witness and the state failed to meet its burden. It relied on Ms. Barton and where the recording was clear that the transaction happened between Ms. Ross and Ms. Barton and not Ms. Barton and Mr. McGath. Run that by me again, why that's clear. Part of what I have in my mind is the statement about do you have something for Cornelia? And there's an answer, yes, but I need a ride or whatever it is. And then is it on the recording that the defendant is heard saying basically I don't want to ride with you because I don't want anybody to see me? Yes, actually, that is on the recording. Okay, if I'm a juror listening to this, would it be reasonable for me to believe that he's the one that delivered the drug? I don't think so, Your Honor, and I'll explain why. First, when Ms. Barton comes into the home and speaks to Ms. Ross, she offers to give us something. She says, here, and Ms. Ross says, booyah. And I believe that that is where the exchange happens. Then the conversation turns to Mr. McGath where Ms. Barton says, may I speak to Marcus? Ms. Ross's response is almost an afterthought. Oh, she's not there to meet Mr. McGath. She's there to meet Ms. Ross. So then the conversation turns to the ride to the pawn shop. And when Mr. McGath is asking for the ride to the pawn shop, Ms. Barton says, I can give him a ride after I drop off this drug. Mr. McGath is in a completely different room. So if she already has the drugs in her hands, the exchange has already happened. The reference to do you have something for Cornelia is explained in Ms. Ross's affidavit, which does come after, where she says he was asking for, it was gas money that they were discussing. Therefore, I think the recording is clear that the exchange had already taken place. Is the recording, register a knock? Only one knock. And there should be a second knock from your perspective. According to Ms. Barton's testimony, if her testimony at trial that she walked into the house and went to the bedroom to get the drugs from Mr. McGath directly from the bedroom, there should have been two knocks. A knock to enter and a knock on the bedroom door, which further shows that the tape contradicts her testimony. And because in this case, the drug dealer was actually Katrina Ross and not Mr. McGath, it was unreasonable for defense counsel not to subpoena Ms. Ross to show up for trial and testify for the defense. She was listed as a defense witness and would have provided exculpatory testimony for Mr. McGath, which would have supported Mr. McGath's theory of the case, which was that... Do we know what she told defense counsel? We know what was in her affidavit that she would have testified that she delivered the drugs and not Mr. McGath. Do we know what she told defense counsel the day or during the trial when she showed up? We do not know what she told defense counsel the day of trial. Is that important? It is important to the trial courts. It would have been important to the trial courts determination of whether or not a post-trial motion should have been granted in this case, which is why the trial court erred in not granting defense counsel the opportunity to put all this information on the record. Well, isn't it important what the attorney heard, thought, and believed, not just what this witness would have said? In terms of calling Ms. Ross to the stand? Yes, in terms of deciding whether or not the attorney's action was appropriate. Your Honor, his decision to call or not call Ms. Ross appears to just have been because she wasn't there. It doesn't appear to have been a choice that he made. It appears. Well, it's what he was told, what he believed, what he understood at the time of trial, which is really important, isn't it? Yes, but he doesn't have a conversation with her before she disappears. He has a conversation with her at which point he tells her what the court has said in terms of people being human and sends it to the public defender. But after that, he doesn't seem to have had a conversation. Well, you've used the word appear and seen here. Why should we be guessing as to what he was told, what he believed, what he thought, and why he did what he did? I apologize, Your Honor. The record does not show that he had a conversation with Ms. Ross after she spoke to the public defender. Could he have? I don't believe the record supports that conclusion. Well, we don't know. I mean, here's this person he talked to, apparently. Someone was talking to her. Yes, but after she speaks to the public defender, when defense counsel comes back to court, he says, when he's asked whether they're going to discuss humans, says, the person who was bringing up these issues has left. And his representation of the post-trial motion was that it was error not to call Katrina Ross. Therefore, his decision not to call her wasn't based off of a discussion he had with her. It was because she wasn't there. You don't know that. You have no idea what it was based on. Why should we be guessing? Well, then, Your Honor, we had an opportunity to litigate this at the trial level. The problem is it would have to be to have him testify, wouldn't it? Don't we need to have the defense attorney testify? No, at the post-trial motion, Katrina Ross could have testified and given all the answers as to why she left and what conversation. No, Katrina Ross isn't the person at issue when it's ineffective assistance of counsel. What's at issue is what counsel thought, believed, why he acted as he did. And we don't know that until he testifies to it, will we? This is by way of saying, why should we be guessing instead of inviting your client to file a post-conviction petition and let him then call his attorney or the state calls attorney since when he files that petition, alleging ineffective assistance of counsel if his casualty is always the confidentiality of attorney-calling privilege, and then say, okay, counsel, tell us about your conversations with Ms. Ross. What did she tell you and when, and what did you decide to do and why? Your Honor, the record shows that I think you can make, the record shows that you can make a decision on the ineffective assistance claim right now without having it to go to post-conviction. But even if this court was to find that it could not do that, the trial court error in refusing to hear the testimony that you require here, the trial court made an error. And therefore, this court can just remand the case on the new trial court post-trial motion and get the answers that way. Well, Crankle doesn't apply, does it? Isn't Crankle a term of art, meaning it only applies when the defendant, per se, raises a post-trial claim? Yes, Your Honor. But on the, in the case People v. Williams, the court found that fundamental fairness sometimes requires a court to sois fonte, consider whether or not Williams was wrong. I respectfully disagree. It's an appellate court decision. We're not required to follow it, are we? You're not required to follow it. It is a First District case. However, Your Honor, the reasoning in Williams is solid. In a case such as this where the trial court makes continuous references, the fact that the witness was not subpoenaed and not called to testify, even though her testimony seems to be material to the case, the court should have sois fonte inquired further into... The whole issue in Crankle is just whether separate counsel should be appointed for the defendant's trial counsel. And in this case, it would have been more important for counsel to be, a different counsel to be appointed, because counsel could not properly argue the ineffective assistance motion because he was presenting information that was alleging his ineffectiveness without calling it ineffectiveness. Is there a difference of any significance if we agreed with you that that's what should be done as opposed to saying, file a post-conviction petition and let's have a hearing on it? Because this would grant my client relief now. Asking him to file a post-conviction petition, it's not necessary in this case. You can decide to send the case back for a new hearing on the post-trial motion, and that will allow the court to reconsider the ineffective assistance issue. My client does not need to file a post-conviction petition. Do you think Ms. Ross' affidavit is important? I do, Your Honor. If we look at what she says, what happened to the heroine? That she exchanged for the cocaine. Well, Ms. Ross, Ms. Barton, when she left the home, was only searched on her person. Her car was not searched when she went back to the police station. So, for all we know, she could have put the heroine in her car. Sorry, I apologize. The heroine could have been in her car before she arrived and made the switch. The house was never searched, so the heroine could still have been in the house. All the alleged inconsistencies and deficiencies in Barton's testimony were argued to the jury, were they not? They were. And the jury heard the tape? They did. And the jury said, guilty anyway? Yes. Isn't the standard of review under these circumstances for us to ask whether any reasonable juror, hearing all this, could have concluded that the state met its burden beyond a reasonable doubt of putting in front of the building? It is, Your Honor, and our position is that the state did not meet this burden, even just listening to the tape and even with the standard of review being in the light most favorable to the state. Your position seems to be that the tape speaks for itself and there's only one interpretation or inference that could be drawn from the tape. Correct. This court had occasion about a year and a half ago to write about paralanguage, talking about how when a jury is considering an audio recorded statement as opposed to a written transcript, that the jury may, is called upon to draw the inferences of what it means because that language contains more communicative information than mere words, because spoken language contains paralanguage. And then we went in to discuss what that means and how it works. And it seems to me that this is precisely the kind of a situation that the discussion of paralanguage applies to. That is, you could listen to the state and I could listen to the state and the jury could listen to it and pauses, emphasis, timing, all these matters of paralanguage might affect our interpretation as to what's being said, to whom, and all the rest of it. Isn't that true? That's true, but that wouldn't affect the fact that Mr. McGaff, for most of the recording, is in a completely different room. And when Ms. Spartan references the drugs in her hands, Mr. McGaff has not entered the room and does not enter the room until almost the end of the recording. So any question of a misunderstanding of what's said when Ms. Spartan first walks into the house is between Ms. Spartan and Ms. Ross. Mr. McGaff is still in a completely different room. The delivery doesn't happen. But it's counsel, there's nothing in the state that says somehow it's impossible for the defendant to have delivered the cocaine to Spartan instead of Ross doing it. Nothing in the state says that or makes that clear. That's your inference and argument. The fact that Ms. I disagree. Ms. Ross never says, here's the cocaine you're interested in, Katrina, or what's her name? No. Okay, well, so the question is who is talking to whom about what and how did this all go down? Ms. Spartan testifies that she said, here, trying to offer the money to Katrina Ross. Ms. Ross says, booyah, some exchange happened. What does that mean? She's giving something back to her. Booyah? Yes. What does that mean? It was, Your Honor, this is when the exchange happened. It's a phrase, it's a colloquialism. But it's a colloquialism that's used in other contexts or at other times. It doesn't mean only or significantly that I'm exchanging something tangible with you. But viewed in light of the fact that Ms. Spartan does have those drugs in her hands before Mr. McGaff walks into the room, I think the inference is that's when the exchange happened and that's what that meant. Booyah, you've got money. Booyah, Spartan has money? I'm sorry, I misunderstood you. Yeah, Spartan has money. Spartan has money, she wants to buy drugs. Which she's buying from Ms. Ross there during that conversation. That's what you said. No one says, Ms. Ross says, yeah, here's the drugs. Does she say that? No, Your Honor, but that still doesn't negate the fact that she has the drugs. That's your inference. That you're arguing that the tape establishes she delivered it. No, it doesn't. But, Your Honor, that still doesn't negate the fact that Mr. McGaff is still in a completely different room when Ms. Spartan references the fact that she has the drugs in her hand and will make that delivery. How does she reference that? She says, I have to drop this off before she gives Mr. McGaff a ride. She says, I have to drop off the crack and testifies in court that she's referencing the drugs before she gives Mr. McGaff a ride to the pawn shop. Mr. McGaff is in a completely different room at this point. He only comes in after the fact. So even if we disagree as to the conversation that's happening between Ms. Spartan and Ms. Ross, it still doesn't take away from the fact that when Ms. Spartan gets the drugs in her hands, Mr. McGaff is in a completely different room. So you think the tape says, she says, well, I've got the drugs, and I have to drop these off before I can do anything else. Before I can take him to the pawn shop. But is that what the tape says?  I have to drop off these drugs. These drugs. Yes. And these people are just so explicit in their articulate, careful statements that by these drugs, she meant the drugs in her hand, not the drugs she's getting from the defendant. In that case, yes, Your Honor, I would say that that's what that means. And the jury would be crazy to believe otherwise. I think the tape is clear that that's what was said in that instance. Thank you. Your Honor, I'd like to briefly discuss my – with that, Your Honor, we would not like to ask for you to reverse Mr. McGaff's conviction or remand for a new post-trial hearing or a new sentencing hearing. We'll hear from you on rebuttal. Thank you, counsel. Mr. McNeil. May it please the court. Counsel. As for Ms. Barton's testimony, she had no motive to lie in this case. It was clear that both Katrina and the defendant were under investigation here. She didn't get a bonus for convicting the defendant instead of Katrina. She didn't even know who was going to deliver the drugs that day to her. It happened to be defendant, so that's who she testified did do it. As for the audio recording, any inconsistencies that she had were pointed out in cross-examination. The jury, of course, was in the best position to evaluate the credibility of all the witnesses, including Ms. Barton, and her explanations as to the minor variances in timeline don't undermine the ultimate fact that the defendant was the one who delivered the drugs. Otherwise, the question of do you have something for Cornelia makes absolutely no sense. On top of that... Was it claiming gas money? Was that supposedly it? Of course, that was prior to trial. I mean, after trial. So that's neither here nor there on the sufficiency of evidence argument. I would submit, just listening to the audio, if that's the only evidence that I heard and somebody asked me point-blank who sold drugs to Ms. Barton, I would say defendant. Otherwise, the whole context of the conversation doesn't make any sense. As far as she's saying, I can't remember the timeline. I don't remember hearing booyah at all, but maybe it was jumbled a lot, so I'm not saying it's not there. But as to saying I have to drop these drugs off, that could clearly mean... I mean, the whole subject of her being there was to obtain drugs. That doesn't mean that she has them in her hand at that moment. It could mean that she's getting ready to get them. So clearly, and especially when we look at the evidence in the light most favorable to prosecution as required, there was sufficient evidence, primarily because Ms. Barton just had no motive to lie here. She had no reason to point out defendant instead of Katrina. As for the ineffective assistance of counsel argument, before Katrina's testimony during the state's case in chief, it was brought to the trial court's attention that she was planning on invoking the Fifth Amendment privilege. The trial court then ordered all parties to review people versus human, presumably for the well-settled point that it's improper to call a witness who's planning on invoking their Fifth Amendment privilege. Counsel later advised the court that he read through human, he talked to Katrina about human, and that she was going to talk to the public defender. Later, after the state rested, defense counsel stated the witness that was going to bring issues as to human, meaning Katrina, is no longer showing up. In other words, they were all on the same page here. If she just didn't show up mysteriously, presumably counsel would have called for a continuance. It's not like he was blindsided. He was the one advising the court that this witness isn't going to show up. As for prejudice, which is the easiest way to dispose of this ineffective assistance argument, the outcome of the proceedings wouldn't have been different no matter what. If he called Katrina to testify, the trial court was well aware that the Fifth Amendment might come into play. Presumably the trial court would bar her testimony if she was planning on invoking the Fifth Amendment. If she wasn't, it was clear enough that she had been talking to the state at some point, because immunity was brought up at some point. Presumably that means she at some point was going to testify preferably to the state's position. As a defense counsel, if I'm in his shoes, do I take a risk with bringing this witness up that could potentially sink the case altogether if she had an inclination like she had before to possibly testify consistent with the state's position? That's an objectively reasonable position for trial counsel to make. And of course, it's well settled that what witnesses to call is a matter of trial strategy that can't support an ineffective assistance argument. Here, there was an objectively reasonable reason for him to call. Even if she was planning on testifying or said she was going to testify consistent with her affidavit, he had a perfectly reasonable, valid, substantial risk that she might, when she's facing this incrimination herself, change her mind. Then, assuming even further that she testified exactly as she said in the... She was allowed to testify, testified exactly as she said in her affidavit post-trial, the outcome of the proceeding still wouldn't have been different because her post-trial affidavit makes absolutely no sense. As Justice Kinnick mentioned, the heroin, there was specific testimony by police that both her car and her person was searched prior to this controlled buy. They followed her to the house in her car. They observed her go into the house. There's absolutely no possible way she had any contraband on her at that point. What logical sense would it make to risk smuggling some heroin in when the police give you money for a controlled buy and then using the heroin instead of a controlled buy? It makes absolutely no sense in the context of this case and physically impossible for her to have had heroin if the police thoroughly searched her car and her person. Also, the point of the, do you have something for Cornelia, meaning gas money, makes absolutely no sense. First of all, gas money is never mentioned at all. People just don't talk that vaguely about a subject that's not even mentioned anywhere on the recording, but they mention a ride, the defendant might get a ride from Ms. Barton. However, that hadn't happened yet. He hadn't asked for a ride yet when Katrina asked, hey babe, do you have something for Cornelia? Clearly, in the context of the conversation, the gas money thing makes zero sense. Compared to Ms. Barton's credible testimony corroborated by the audio recording, I would submit, even if Katrina testified exactly as she stated in her affidavit, the jury would have placed zero credibility in her story and the outcome of the proceeding wouldn't have been different. So both prongs of Strickland fail here. As for the Krenkel issue, Your Honor pointed out, and I cited People v. Gillespie, Krenkel provides a defendant with an opportunity to have a fair hearing on his claim of ineffective assistance of counsel. Here, a defendant never alleges ineffective assistance of counsel, not in any communication with the court or anything in the record, not in a statement of allocution. Krenkel clearly doesn't apply, and People v. Gillespie, I would argue, is directly on point, distinguishes Williams as well. There, like here, there's argued newly discovered evidence. Here, it's the affidavit that Katrina was going to testify. The affidavit actually doesn't say that. It doesn't say that I would have testified, blah, blah, blah. That's in the post-trial motion. It's not in Katrina's affidavit. She says, I'm the one who sold the drugs, not the defendant. At any rate, that is not enough to show that the court had any duty to sua sponte inquire, or basically it would be fashioning an ineffective assistance of counsel argument from this post-trial motion. And the trial court has no duty to do that. As for the offer of proof, the trial court, it's hard to argue this one, because the trial court accepted the counsel's offer of proof as to Katrina testifying consistently at the post-trial motion with what she stated in her affidavit. The only thing counsel added after that was that she would also testify as to why she was absent during the afternoon session. The trial court then stated, okay, is there any more additional argument? And counsel stated, no. There's not even an argument before the trial court at that point. This is a clear case of waiver and affirmative acquiescence. It's hard for the trial court to argue any position that's not before it. And even if it was, her absence as to being absent at the afternoon session is completely irrelevant to the trial court's granting or denying defendant's post-trial motion. Only what Katrina alleged in her affidavit, whether she was overslept or whatever, has no bearing. Either she was called or she wasn't. It has no bearing on her testimony as to her affidavit. As to defendant's sentencing, which is the last argument, the record reflects that there were no, it was within the statutory limits, no abuse of discretion and no improper factors considered. This argument wasn't preserved, was not preserved in the post-sentencing motions, therefore forfeited pursuant to Rathbone and Ehlers. But also the court did offer some personal comments about the widespread opioid epidemic in the state and the country. However, right before that they say, I'm not considering this, but I feel compelled to mention it. Clearly the record contradicts that they considered any improper statutory aggravating factors. As to societal harm, that was a rejection of defense counsel's sentencing recommendation that the statutory mitigating factor that the defendant's conduct didn't threaten or cause any serious harm. That was a rejection of that statutory mitigating factor. People v. McCain, which I cited in my briefs, holds consistent that trial court correctly determined the harm inherently caused by drug-related crimes rendered this exact mitigating factor inapplicable. So clearly there was no plain error here, no error at all. And if the trial court has no questions about any of the issues, I would ask the court to affirm. Thank you, counsel. Ms. Cabrera-Wilson, any rebuttal, ma'am? Briefly, Your Honor. Counsel stated that Ms. Barton had no motive to lie and that she didn't even know who was going to do the delivery because both Mr. McGath and Ms. Ross were under investigation. The record doesn't show that they were under investigation before Ms. Barton initiated the investigation. She initiated the investigation into either Mr. McGath or Ms. Ross, but continuously pointed the finger at Mr. McGath afterwards. In addition, she didn't... Well, his argument, if I understand it, is, I don't know if it's all that significant, but it's that why would she, if it's Ross who delivered the goods, why would Barton say that instead of the defendant? There doesn't seem to be any explanation that she would finger the innocent guy instead of his girlfriend if that's who she got the drugs from. Well, she has a 10-year relationship with Ms. Ross. She has more ties to Ms. Ross than she does to Mr. McGath. So the choice, once she had a choice to make between the two of them, she could simply have went up to Mr. McGath. In addition, she did have a motive to lie because, as I said, in the past she had received lenient sentences when dealing with a proactive unit, and in this case she had just been arrested for driving on a suspended license. The issue of whether or not Katrina would have plead the Fifth does come up in the record, but Katrina herself never says that she's going to plead the Fifth. And in addition, the State offers her immunity, not because she's going to be favorable to the State, as counsel just stated, because nothing in the record shows that she was at any point going to be favorable to the State. The State simply stated that it would offer her immunity in order for her to testify. As to the heroin that Ms. Katrina Ross's affidavit says that she exchanged for the cocaine, we're talking about a small amount of drugs here. It could easily have been concealed whether or not the car or her person was searched. Ms. Barton's testimony as to the delivery itself is also completely different from what happens on the tape. She testifies that she walks in, goes to the bedroom, but that's contradicted on the tape, and when that's pointed out on cross-examination, she tries to change her story in several different ways. So therefore, I would not characterize Ms. Barton as being a credible witness. As to the trial court's error in refusing to accept the offer of proof, this issue was not waived by acquiescence, and it was not forfeited. The trial court says, do you have any other argument on the motion, and cuts off any further offer of proof that the defense counsel was trying to put into the record. When he said he doesn't have any other arguments, it's on the motion, not on the specific issue of the offer of proof. As to sentencing, Your Honor, the court makes very many references to the societal harm, not as factors that she's using to negate the mitigation in this case, but as factors she's considering in aggravation. He said that this case did not cause physical harm. I believe he's arguing as to specific harm to an individual in this case, but it's not that Mr. McGaff did not cause harm to the society. Harm to the society, considering that it's a factor in aggravation, is double enhancement. It's a factor inherent in the offense, and the state doesn't argue that it's not a factor inherent in the offense. The state only argues that the court in this case did not consider that. And even though the issue was forfeited because it wasn't raised in the motion to reconsider, this court can consider it under either first prong or second prong, following this court's most recent decision in Margio, which isn't cited in the briefs because the briefs were filed before. But this court can consider it under either prong. Mr. McGaff was facing a 30-year maximum sentence. The state in this case asked for a 20-year sentence. The defense asked for 10, and this court sentenced Mr. McGaff to 25 years. This court cannot say that the improper consideration of the societal factors were not significant in this case, and therefore a remand for a new sentencing hearing is warranted, especially when Mr. McGaff got such an excessive sentence for 0.1 grams of cocaine. What about his eight prior felony convictions, including separate convictions for armed robbery, residential burglary, and manufacturing? That was already considered in sentencing Mr. McGaff as a Class X offender, and the court does separately consider his criminal history as a factor in aggravation. So given eight prior felony convictions and four prior separate prison sentences, how can any sentence within a sentencing range be deemed excessive? Your Honor, in this case, what the standard is, is whether or not you can say that the improper factors that the court considered did not affect the sentence. Yes, Mr. McGaff has an excessive sentence, but if the court at all considered the improper factors in fashioning the 25-year sentence, the case goes back for a new sentencing hearing.